UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
THE PARKWAY HOSPITAL, INC., et ano.,

                Plaintiffs,

    -against-                                                    09 Civ. 7507 (LAK)

RICHARD F. DAINES, et al.,

                Defendants.
------------------------------------------x

## MEMORANDUM OPINION

Appearances:

    Lawrence P. Wolf

    Eric M. Baum
    SIMON, EISENBERG & BAUM, LLP

    *Attorneys for Plaintiffs*

    John Gasior
    Assistant Attorney General
    ANDREW M. CUOMO
    ATTORNEY GENERAL OF THE STATE OF NEW YORK
    *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge*.

        In November 2008, The Parkway Hospital, Inc. ("Parkway"), which had emerged from bankruptcy[1] earlier that year and which previously had operated a proprietary hospital located in

---

[1] *In re The Parkway Hospital, Inc.,* No. 05 B 14876 (PCB).

Queens, closed its doors following the expiration of its state operating certificate and several unsuccessful attempts in judicial and administrative *fora* to forestall that expiration.  The hospital has not functioned for nearly a year.

Undaunted by its previous failures, it filed this action in August 2009 and recently moved by order to show cause for a mandatory preliminary injunction that, if granted, would restore its operating certificate *pendente lite*.  This is the Court's decision on the motion for a preliminary injunction.

*Facts*

*The Berger Commission*

In April 2005, New York enacted legislation creating the Commission on Health Care Facilities, also known as the Berger Commission, to conduct a rational, independent review of health care capacity and resources in this state.  The Commission was charged with "examining the system of general hospitals . . . and recommending changes to that system in light of factors submitted pursuant to . . . [the legislation] and additional factors established by the commission."[2]

After hearing a presentation by Parkway, the Commission's Regional Advisory Committee ("RAC") for New York City concluded that Parkway Hospital was a prime candidate for closure because "it [wa]s not an essential hospital and the surrounding hospitals can absorb the acute care demand."[3]  It recommended also that the closure be deferred for two years to afford the owners

---

[2] N.Y. Laws 2003, c. 63, § 2(a).

[3] Aquino Decl. Ex. C, at 17.

3

an opportunity to downsize and demonstrate viability.[4]  The Berger Commission did not agree.  It recommended to the governor and the legislature, in late 2006, that Parkway be closed.  That recommendation, in accordance with the governing legislation, gained the force of law by January 1, 2007, and the New York State Department of Health ("DOH") was obliged to implement that recommendation by June 30, 2008.

*Parkway Resists Its Closing*

As noted, Parkway made a number of efforts in judicial and other *fora* to block the expiration of or obtain other relief regarding its operating certificate.  In view of the bases for disposition of this motion, it is not necessary to detail all of them.  Suffice it to say for present purposes that Parkway, prior to the filing of this action, filed an adversary proceeding in the Bankruptcy Court against DOH Commissioner Daines and the State of New York.  The complaint[5] claims that the closing of the hospital by the State violated its due process rights and seeks damages of $129,465,623.

*The Complaint and the Motion*

Parkway and its chief executive officer, Robert Aquino, M.D., brought this action in August 2009.  The complaint alleges that the defendants – Commissioner Daines, the Public Health Council of the State of New York, and members of the Committee on the Establishment of Health

---

[4]   *Id.*

[5]   Gasior Aff. Ex. 13.

4

Care Facilities ("CEHCF") – violated Parkway's rights to procedural and substantive due process and effected an uncompensated taking. But Parkway does not stop there.

In March 2009, former New York State Assemblyman Anthony Seminerio was indicted for mail fraud.[6] The indictment charged, among other things, that Seminaro schemed to deprive the State of his honest services by (1) seeking to influence State action on behalf of another hospital without disclosing that a "consulting" firm with which he was connected was being paid by that entity, and (2) attempting in 2005 to extort a non-client hospital by suggesting to one of its senior executives that the hospital hire Seminerio's consulting firm and, when the executive balked, asking the executive whether he "knew how miserable SEMINERIO could make [his] life."[7] Parkway's Dr. Aquino states that he was the executive Seminerio threatened and that Parkway was the "non-client hospital" described in the indictment.[8] He speculates that "it may very well be that the determination to close Parkway was predicated upon the failure of Parkway administration to pay the Assemblyman's demand for a bribe."[9] Seminerio pleaded guilty to the indictment and awaits sentencing. It is worth noting, however, that Seminerio, in allocuting to the offense, admitted no wrongdoing in relation to Parkway, either by name or by reference to any non-client hospital referred to in the indictment.[10]

---

[6] *United States v. Seminerio,* No. S1 08 Crim. 1238 (NRB) (filed Mar. 23, 2009).

[7] *Id.* ¶ 11.

[8] Aquino Decl. ¶ 27.

[9] *Id.* ¶ 3. *See also* Cpt. ¶¶ 34-40.

[10] Tr., June 24, 2009, at 9-11, *United States v. Seminerio,* 08 Crim. 1238 (NRB).

*Discussion*

*The Preliminary Injunction Standard*

"A party seeking a preliminary injunction must establish irreparable harm and either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor."[11] To the extent that provisional relief is mandatory in nature – that is, where it "will alter, rather than maintain, the status quo " "by commanding some positive act" – there must be "a clear showing that the moving party is entitled to the relief requested, or [that] extreme or very serious damage will result from a denial of preliminary relief."[12] The same is true where, as here, the moving party challenges "'government action taken in the public interest pursuant to a statutory or regulatory scheme.'"[13] Moreover, a party seeking a preliminary injunction must show a threatened injury "that is neither remote nor speculative, but actual and imminent" and that cannot be remedied by an award of monetary damages.[14]

*Irreparable Injury*

Parkway ceased operating in November 2008. It is not a functioning institution. It most assuredly is not threatened with any loss of an ongoing business or of good will. It already is

---

[11] *Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir. 2002).

[12] *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 33-34 (2d Cir.1995).

[13] *Jolly v. Coughlin,* 76 F.3d 468, 473 (2d Cir. 1996).

[14] *Shapiro v. Cadman Towers, Inc.,* 51 F.3d 328, 332 (2d Cir. 1995) (quoting *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir. 1989)).

seeking more than $129 million in damages from the State for termination of its operating certificate in an adversary proceeding in the Bankruptcy Court. Thus, its claim of irreparable injury necessarily is unconventional. Despite its damage claim in the Bankruptcy Court, it contends that the Eleventh Amendment bars any damage recovery against the State and, in consequence, that a mandatory preliminary injunction is the only remedy available to it for the allegedly unconstitutional termination of its operating certificate.[15]

Parkway relies for the proposition that it is threatened with irreparable injury mainly on *John E. Andrus Memorial, Inc. v. Daines*.[9] But *Andrus* in this respect was an entirely different case.

*Andrus* operated a nursing home in Hastings-on-Hudson, New York, at the time the Berger Commission began its work. It sued to enjoin the State from amending its operating certificate to require conversion of its facility into an assisted living facility, as the Commission had recommended, which essentially would have put it out of business. Judge Seibel granted a preliminary injunction. Significantly for present purposes, she did so in relevant part on the express concession, for purposes of the motion, "that forcing Andrus to close" which would have been the effect of the recommended amendment, "would constitute irreparable injury."[10] While Judge Seibel observed also in a footnote that the Eleventh Amendment would bar any recovery against

---

[15] Parenthetically, it is more than passingly strange that Parkway is suing the State for over $129 million in the Bankruptcy Court while at the same time it argues here that the Eleventh Amendment forecloses any damage recovery.

[9] 600 F. Supp.2d 563 (S.D.N.Y. 2009).

[10] *Id.* at 571.

Commissioner Daines in his official capacity,[11] that observation was unnecessary to the result.

There are at least two salient differences between *Andrus* and this case for purposes of the irreparable injury issue, even assuming the correctness of the *Andrus* footnote. First, the finding of irreparable injury in *Andrus* rested on the State's concession of the point for purposes of the motion. In this case, the State contests the issue. Second, and even more important, *Andrus* involved an operating health care facility. The continued existence of its business was threatened, an injury long regarded in this Circuit as irreparable.[12] Parkway, in contrast, has been out of business for nearly a year. In consequence, Parkway's reliance on *Andrus* to establish irreparable injury is misplaced.

Although Parkway has not argued it, I can imagine a theory on which Parkway, assuming its Eleventh Amendment argument were correct, an issue I need not decide, could have attempted to make out a claim of threatened irreparable injury. If a preliminary injunction were denied but Parkway ultimately were to prevail on the merits, Parkway might have argued, Parkway would have been wrongly prevented from operating from when the preliminary injunction would have issued until the entry of a final judgment. Were that to occur, and were Parkway able to operate profitably if a preliminary injunction requiring restoration of its operating certificate now were issued, it might plausibly have contended the interim loss of its ability to operate would result in an unrecoverable loss that could be averted if a preliminary injunction now restored its operating certificate for the pendency of the litigation. But this is essentially a theoretical construct. I am not

---

[11] *Id.* at 572 n.6.

[12] *See, e.g., Tom Doherty Assocs., Inc.,* 60 F.3d at 37; *John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.,* 588 F.2d 24, 28-29 (2d Cir. 1978)

8

persuaded that Parkway could resume operations in any reasonable time frame, and there certainly is no evidence that it could do so profitably even if it could succeed in reopening.

To be sure, Dr. Aquino's moving declaration asserts that "Parkway can be opened as a fully functional hospital within weeks." But he offers no elaboration or support for that conclusory statement.[13] His corrected reply affidavit goes a bit further. He there avers that there is a full service laboratory operating on the premises, that the doctors are "ready, willing and able," that Parkway could reopen its urgent care center within 24 hours,[14] that unnamed "[i]nvestors have indicated an interest in funding the reopening," and that Parkway could be functioning as a community hospital within "a week to 14 days."[15] Not only are these assertions rather conclusory,[16] but Dr. Aquino concedes that Parkway has been impeded in its ability to maintain the building.[17] Furthermore, indications of interest in funding a reopening are quite a different matter from binding commitments, especially in this time of disruptions in the credit and capital markets. Thus, I decline to find that Parkway would resume operation within any reasonable period if the motion were granted. But even this conclusion ultimately is unnecessary to the disposition of this motion.

---

[13] Aquino Decl. ¶ 43.

[14] The declaration of Parkway's executive vice president says that a fully functional emergency room could be opened within 30 days. Desai Decl. ¶ 5.

[15] Aquino Corr. Reply Decl. ¶¶ 6-8. *But see* Andrea Decl. ¶ 3 (Parkway could be restored to a full service general hospital in not more than 60 days).

[16] There is no indication, for example, that the entity is in a financial condition that would permit reopening or that it could procure adequate nursing, administrative and other non-professional staff within any of these time periods.

[17] *Id.* ¶ 6.

9

In order to show irreparable injury on the hypothetical theory outlined above, Parkway would have had to demonstrate that it probably would operate *profitably* if it were to reopen. But there is nothing in Parkway's submissions to support any such conclusion. Since it has failed to show that it likely would be deprived of any operating profit between now and a final judgment, I find that Parkway has not established any threat of immediate and irreparable injury.[18]

*Likelihood of Success on the Merits*

While the foregoing is sufficient to justify denying the preliminary injunction, Parkway's inability to demonstrate a likelihood of success on the merits provides another basis.

Parkway makes essentially three claims in the complaint. It asserts first that it was denied procedural due process because neither the Berger Commission nor the State Commissioner of Health give it notice or the opportunity to be heard before recommending its closure and implementing that recommendation, respectively.[19] Second, it makes an entirely conclusory claim that the revocation of the operating certificate was substantive due process violation.[20] Finally, it alleges that the revocation of its operating certificate was an unconstitutional taking.[21] In its

---

[18] In light of this conclusion, I need not consider whether Parkway delayed unduly in seeking relief from this Court and the effect of such delay on its claim of irreparable injury. *See, e.g., Tough Traveler, Ltd. v. Outbound Prods.,* 60 F.3d 964, 968 (2d Cir.1995) ("failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury"). This should not be construed as an acceptance of Parkway's arguments on this point.

[19] Cpt. ¶ 42.

[20] *Id.* ¶ 46.

[21] *Id.* ¶ 48.

memorandum in support of this motion and in argument before the court, however, Parkway contends only that it is likely to prevail on the procedural due process claim. Accordingly, I confine my analysis to that contention and treat the other arguments as abandoned for purposes of this motion.

Parkway relies solely on the *Andrus* case to support its procedural due process claim. In *Andrus*, Judge Seibel found, on the basis of the evidence before her, that no individualized notice had been given to the nursing home plaintiff in that case "that it was being considered for closure" and found also that it had been given no meaningful opportunity to be heard. She emphasized, however, that her "holding [wa]s a narrow one, applicable solely to the peculiar factual circumstances at issue in"[22] that case, including her view that the State had affirmatively misled the plaintiff into believing it was not a candidate for closure.[23] This case is different.

Dr. Aquino's moving declaration here does not even address the issues whether Parkway received notice, individualized or otherwise, that it was being considered for closure and whether it had a meaningful opportunity to be heard. To the contrary, Parkway quite plainly knew that its operating certificate was at stake before the Berger Commission acted on the RAC recommendation.[24] The excerpt from the New York City RAC's report attached to Dr. Aquino's declaration made absolutely clear that Parkway made a presentation to the RAC, that the RAC designated Parkway a prime candidate for closure, and that the RAC recommended postponing the

---

[22] *Andrus*, 600 F. Supp.2d at 584.

[23] *Id.* at 577.

[24] Gasior Aff. Ex. 2 ¶ 23.

11

closure for two years.[25] Thus, Dr. Aquino's contention that he had no "idea that Parkway was selected for closure" before the Commission acted is demonstrably untrue. And there is nothing in Parkway's submission as to whether Parkway sought an opportunity to be heard by the Commission before it acted.

The record is unclear as to whether Parkway in fact was heard before the Berger Commission, as distinguished from the RAC, before the Commission acted. Mr. Sandman, the Commission's executive director, averred that he met with Dr. Aquino and other representatives of Parkway sometime after an April 20th meeting between Parkway and the New York City RAC, but before the Commission issued its report, to discuss the Berger Commission's concerns regarding Parkway's operations and Parkway's place in the restructured system of health care facilities in New York City.[26] He asserts also that other members of the Commission staff were present.[27] Dr. Aquino, however, denied this, testifying that there was no such meeting.[28]

This conflict is immaterial, troublesome though it is. Even if I were to credit Dr. Aquino's testimony, and I have substantial doubt as to its accuracy, Parkway has submitted no persuasive evidence that it in fact made any effort to meet with the Commission or its staff once the New York City RAC made its recommendation or that it was denied an opportunity to do so. As a result, even if Parkway had made the requisite showing of irreparable injury, it has not demonstrated

---

[25] Aquino Decl. Ex. C., at 17.

[26] *Id.*

[27] *Id.*

[28] Tr., Oct. 20, 2009, at __.

the high likelihood of success required for this extraordinary preliminary injunction — mandatory in nature, bypassing the entire state administrative system, and granting it essentially all the relief it could achieve were it to prevail and granting relief against action taken by the government in the discharge of appropriate governmental functions.

Parkway's conjectures with regard to Seminerio do not alter this result. Dr. Aquino theorizes that, as a result of Parkway's refusal to pay Seminerio's "consulting fee," Seminerio told two Department of Health officials — James Clyne and Dennis Whelan — to do all they could to shut Parkway down.[29] Messrs. Clyne and Whelan each denies that such a conversation occurred.[30] Given Dr. Aquino's lack of personal knowledge of any contact between Seminerio and Clyde or Whelan, their denials, and the fact that Seminerio has admitted nothing with respect to Parkway in his guilty plea allocution,[31] there is no evidence to support Dr. Aquino's theory. In any event, these arguments do not bear on Parkway's claimed procedural due process violation, which relates to its lack of notice of and opportunity to be heard by the Berger Commission.

*Evidentiary Hearing*

Finally, Parkway contends that it is entitled to a more expansive evidentiary hearing on this motion.[32] A long line of cases in this Circuit make clear that "there is no hard and fast rule

---

[29] Aquino Decl. ¶ 30.

[30] Whalen Aff. ¶ 6; Clyne Aff. ¶ 13.

[31] *See* Tr., June 24, 2009, at 9-11, *United States v. Seminerio,* 08 Crim. 1238 (NRB).

[32] The Court took testimony from Dr. Aquino on the question of whether he met with Mr. Sandman as the latter said.

. . . that oral testimony must be taken on a motion for a preliminary injunction."[33]  No hearing is required where the record is devoid of disputed material facts or where the paper record makes a complete resolution possible.[34]  This is a not a case on which a more elaborate evidentiary hearing is required because the essential facts, at least with respect to irreparable injury, are not in dispute.[35]

*Conclusion*

For the foregoing reasons, Parkway's motion for a preliminary injunction [DI 9] is denied.  The foregoing constitute my findings of fact and conclusions of law.

SO ORDERED.

Dated:  October 22, 2009

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[33] *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations.*, 107 F.3d 979, 985 (2d Cir. 1997); *Herbert Rosenthal Jewelry Corp. v. Grossbardt*, 428 F.2d 551, 554-55 (2d Cir. 1970); *Redac Project 6426, Inc. v. Allstate Ins. Co.*, 402 F.2d 789, 790-91 (2d Cir. 1968); *SEC v. Frank*, 388 F.2d 486, 490-91 (2d Cir. 1968).

[34] *Moore*, 409 F.3d at 512; *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) ("An evidentiary hearing is not required when the relevant facts either are not in dispute . . . or when the disputed facts are amenable to complete resolution on a paper record.").

[35] *See id.* (affirming district court's denial of preliminary injunction without an evidentiary hearing where "the record [wa]s devoid of any evidence of [irreparable injury.]").